UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RYAN A. WOOD, Individually and On Behalf of All Others Similarly Situated,<br><br>                          Plaintiff,<br><br>          v.<br><br>BANK OZK, GEORGE GLEASON, and GREGORY MCKINNEY,<br><br>                          Defendants. | Case No.:<br><br>CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS<br><br><u>JURY TRIAL DEMANDED</u> |

Plaintiff Ryan A. Wood ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, inter alia, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Bank OZK ("Bank OZK" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet.  Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.       This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired Bank OZK securities between February 19, 2016 through October 18, 2018, both dates inclusive (the "Class Period"),

seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.      Bank OZK was founded in 1981 and is headquartered in Little Rock, Arkansas. The Company was formerly known as Bank of the Ozarks and changed its name to Bank OZK in July 2018. As of December 31, 2017, the Company operated through 253 offices in Arkansas, Georgia, Florida, North Carolina, Texas, Alabama, South Carolina, California, New York, and Mississippi.   Bank OZK's common stock trades on the Nasdaq Global Select Market ("NASDAQ") under the ticker symbol "OZK".

3.      Bank OZK provides a range of retail and commercial banking services to businesses, individuals, and non-profit and governmental entities. In addition to traditional savings and checking accounts, the Company offers various loan products, including real estate loans, such as loans secured by residential 1-4 family, non-farm/non-residential, agricultural, construction/land development, multifamily residential properties, and other land loans; small business and consumer loans; indirect consumer marine and RV loans; and government guaranteed loans comprising SBA and FSA guaranteed loans.

4.      Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the Company lacked adequate internal controls to assess credit risk; (ii) as a result, certain of the Company's loans posed an increased risk of loss; (iii) certain substandard loans were reasonably likely to lead to charge-offs; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

5.      On October 18, 2018, the Company reported that it had "incurred combined charge-offs of $45.5 million on two Real Estate Specialties Group credits" that had previously been classified as substandard.

6.      On this news, the Company's share price fell $9.33 per share, more than 26%, to close at $25.52 per share on October 19, 2018, on unusually heavy trading volume.

7.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

8.      The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

9.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and Section 27 of the Exchange Act.

10.     Venue is proper in this Judicial District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. § 1391(b) as the Company's securities are traded on the NASDAQ, located within this Judicial District.

11.     In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of a national securities exchange.

## PARTIES

12.    Plaintiff, as set forth in the attached Certification, acquired the Company's securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

13.    Defendant Bank OZK is incorporated under the laws of Arkansas with its principal executive offices located at 17901 Chenal Parkway, Little Rock, Arkansas. Bank OZK's common stock trades on the NASDAQ exchange under the symbol "OZK." Prior to July 17, 2018, the Company was known as Bank of the Ozarks and its common stock traded under the symbol "OZRK."

14.    Defendant George Gleason ("Gleason") was the Chief Executive Officer and Chairman of the Board of Directors of the Company at all relevant times.

15.    Defendant Gregory McKinney ("McKinney") was the Chief Financial Officer and Chief Accounting Officer of the Company at all relevant times.

16.    The Defendants referenced above in ¶¶ 14-15 are sometimes referred to herein collectively as the "Individual Defendants."

17.    The Individual Defendants possessed the power and authority to control the contents of the Company's SEC filings, press releases, and other market communications. The Individual Defendants were provided with copies of the Company's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected. Because of their positions with the Company, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive

4

representations being made were then materially false and misleading. The Individual Defendants are liable for the false statements and omissions pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

18.    Bank OZK was founded in 1981 and is headquartered in Little Rock, Arkansas. The Company was formerly known as Bank of the Ozarks and changed its name to Bank OZK in July 2018. As of December 31, 2017, the Company operated through 253 offices in Arkansas, Georgia, Florida, North Carolina, Texas, Alabama, South Carolina, California, New York, and Mississippi.

19.    Bank OZK provides a range of retail and commercial banking services to businesses, individuals, and non-profit and governmental entities. In addition to traditional savings and checking accounts, the Company offers various loan products, including real estate loans, such as loans secured by residential 1-4 family, non-farm/non-residential, agricultural, construction/land development, multifamily residential properties, and other land loans; small business and consumer loans; indirect consumer marine and RV loans; and government guaranteed loans comprising SBA and FSA guaranteed loans.

### Materially False and Misleading Statements Issued During the Class Period

20.    The Class Period begins on February 19, 2016, when the Company filed its annual report on Form 10-K for the period ended December 31, 2015 (the "2015 10-K"). In the 2015 10-K, the Company reported net income of $182.3 million and "substandard" loans and leases of $25.826 million. Substandard loans and leases "are characterized by deterioration in quality exhibited by a number of weaknesses requiring corrective action and posing risk of some loss."

21.    The 2015 10-K also contained the following risk factor related to the Company's "credit risk":

**If we do not properly manage our credit risk, our business could be seriously harmed.**

There are substantial risks inherent in making any loan or lease, including, but not limited to —

- risks resulting from changes in economic and industry conditions; risks

- inherent in dealing with individual borrowers;

- risks inherent from uncertainties as to the future value of collateral; and

- the risk of non-payment of loans and leases

Although we attempt to minimize our credit risk through prudent loan and lease underwriting procedures and by monitoring concentrations of our loans and leases, there can be no assurance that these underwriting and monitoring procedures will reduce these risks. Moreover, as we continue to expand into new markets, credit administration and loan and lease underwriting policies and procedures may need to be adapted to local conditions. The inability to properly manage our credit risk or appropriately adapt our credit administration and loan and lease underwriting policies and procedures to local market conditions or changing economic circumstances could have an adverse effect on our allowance and provision for loan and lease losses and our financial condition, results of operations and liquidity.

22.    On April 11, 2016, the Company issued a press release to announce its first quarter 2016 financial results, also attached to a Form 8-K filed with the SEC the next day, which reported net income for the quarter of $51.695 million.

23.    On May 6, 2016, the Company filed a quarterly report on Form 10-Q for the quarter ended March 31, 2016 that affirmed the financial results reported in the press release dated April 11, 2016. The Company also reported that its substandard loans had decreased to $20.93 million.

24.     On July 11, 2016, the Company issued a press release to announce its second quarter 2016 financial results, also attached to a Form 8-K filed with the SEC that day, which reported net income for the quarter of $54.5 million.

25.     On August 8, 2016, the Company filed a quarterly report on Form 10-Q for the quarter ended June 30, 2016 that affirmed the financial results reported in the press release dated July 11, 2016. The Company also reported that its substandard loans had decreased to $16.97 million.

26.     On October 11, 2016, the Company issued a press release to announce its third quarter 2016 financial result, also attached to a Form 8-K filed with the SEC that day, which reported net income for the quarter of $76.0 million.

27.     On November 8, 2016, the Company filed a quarterly report on Form 10-Q for the quarter ended September 30, 2016 that affirmed the financial results reported in the press release dated October 11, 2016. The Company also reported that its substandard loans had decreased to $16.65 million.

28.     On January 17, 2017, the Company issued a press release to announce its fourth quarter and full year 2016 financial results, also attached to a Form 8-K filed with the SEC that day, which reported net income for the quarter of $87.8 million and $270 million for the year.

29.     On March 1, 2017, the Company filed an annual report on Form 10-K for the year ended December 31, 2016 that affirmed the financial results reported in the press release dated January 17, 2017. The Company also reported that its substandard loans had increased to $23.8 million.

30.     On April 11, 2017, the Company issued a press release to announce its first quarter 2017 financial results, also attached to a Form 8-K filed with the SEC that day, which reported net income for the quarter of $89.2 million.

31.     On May 5, 2017, the Company filed a quarterly report on Form 10-Q for the quarter ended March 31, 2017 that affirmed the financial results reported in the press release dated April 11, 2017. The Company also reported that its substandard loans had decreased to $20.66 million.

32.     On July 12, 2017, the Company issued a press release to announce its second quarter 2017 financial results, which reported net income for the quarter of $90.5 million.

33.     On August 8, 2017, the Company filed a quarterly report on Form 10-Q for the quarter ended June 30, 2017 that affirmed the financial results reported in the press release dated July 12, 2017. The Company also reported that its substandard loans had increased to $52.76 million.

34.     On October 11, 2017, the Company issued a press release to announce its third quarter 2017 financial results, which reported net income for the quarter of $96 million.

35.     On November 7, 2017, the Company filed a quarterly report on Form 10-Q for the quarter ended September 30, 2017 that affirmed the financial results reported in the press release dated October 11, 2017. The Company also reported that its substandard loans had decreased to $51.4 million.

36.     On January 16, 2018, the Company issued a press release to announce its fourth quarter and full year 2017 financial results, which reported net income for the quarter of $146.164 million and $421.89 million for the full year.

37.    On February 27, 2018, the Company filed an annual report on Form 10-K for the year ended December 31, 2017 that affirmed the financial results reported in the press release dated January 16, 2018. The Company also reported that its substandard loans had increased to $85.05 million.

38.    On April 12, 2018, the Company issued a press release to announce its first quarter 2018 financial results, which reported net income for the quarter of $113.1 million.

39.    On May 8, 2018, the Company filed a quarterly report on Form 10-Q for the quarter ended March 31, 2018 that affirmed the financial results reported in the press release dated April 12, 2018. The Company also reported that its substandard loans had decreased to $84.963 million.

40.    On July 11, 2018, the Company issued a press release to announce its second quarter 2018 financial results. Therein, the Company, in relevant part, stated that net income for the quarter was $114.8 million.

41.    On August 7, 2018, the Company filed a quarterly report on Form 10-Q for the quarter ended June 30, 2018 that affirmed the financial results reported in the press release dated July 11, 2018. The Company also reported that its substandard loans had increased to $92.94 million.

42.    The above statements identified in ¶¶ 20-41 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors that: (i) the Company lacked adequate internal controls to assess credit risk; (ii) as a result, certain of the Company's loans posed an increased risk of loss; (iii) certain substandard loans were

reasonably likely to lead to charge-offs; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

## The Truth Begins to Emerge

43.    The truth began to emerge on October 18, 2018, when the Company issued a press release to announce its third quarter 2018 financial results, which was attached to a Form 8-K filing dated that same day. The press release stated in relevant part,:

> Bank OZK (the "Bank") (Nasdaq: OZK) today announced that net income for the third quarter of 2018 was $74.2 million, a 22.7% decrease from the third quarter of 2017. Diluted earnings per common share for the third quarter of 2018 were $0.58, a 22.7% decrease from the third quarter of 2017.
>
> * * *
>
> ***During the third quarter of 2018, the Bank incurred combined charge-offs of $45.5 million on two Real Estate Specialties Group ("RESG") credits***. These two unrelated projects are in South Carolina and North Carolina, have been in the Bank's portfolio since 2007 and 2008, and were previously classified as substandard. The combined balance of these credits, after the charge-offs, is $20.6 million.
>
> * * *
>
> The Bank's annualized net charge-off ratio for non-purchased loans was 1.32% for the third quarter of 2018 compared to 0.08% for the third quarter of 2017, and it was 0.49% for the first nine months of 2018 compared to 0.06% for the first nine months of 2017. The Bank's annualized net charge-off ratio for all loans was 1.14% for the third quarter of 2018 compared to 0.09% for the third quarter of 2017, and it was 0.43% for the first nine months of 2018 compared to 0.08% for the first nine months of 2017. The Bank's provision for loan losses totaled $41.9 million for the third quarter and $57.1 million for the first nine months of 2018 compared to $7.8 million for the third quarter and $18.8 million for the first nine months of 2017. ***The increase in the Bank's provision expense for the third quarter and the first nine months of 2018 was primarily due to the charge-offs on the two RESG credits and the associated recalibration of the allowance for loan losses***.
>
> The Bank's allowance for loan losses for its non-purchased loans was $96.6 million, or 0.67% of total non-purchased loans, at September 30, 2018 compared to $85.2 million, or 0.71% of total non-purchased loans, at September 30, 2017. The Bank had $1.6 million of allowance for loan losses for its purchased loans at both September 30, 2018 and 2017.

44.    On October 19, 2018, the Company held a conference call with analysts and investors. On that call Defendant Gleason responded to an analysts question concerning the Company's substandard loans:

**Catherine Mealor [KBW]**

Just wanted to start with a couple of questions on the 2 credits that had deterioration this quarter. ***And my first question is just, can you give us a little color about when the credits went substandard? And then how -- and then when the $19 million reserve was originally built into these credits?***

**George Gleason**

Yes. I'd be happy to do so***. The South Carolina credit went substandard in the second quarter of 2017. The North Carolina credit went substandard in the fourth quarter of 2017.*** And of course, our substandard and watch assets and other writings on our assets are reported in the notes in our Qs and Ks. So those were disclosed in those numbers, not specifically referenced, but disclosed in those numbers. The reserves for them, the $19 million, were accumulated over that period of time. Each of those credit was a watch-rated credit before it became substandard. So when it was a watch-rated credit, they added 2.5% allowance allocation for them. And then as they became watch-rated credit, those allowance allocations were increased based on the appraisals on the properties at the time. The 2 properties have both been appraised in the last 2 years, one, I think, about 2 years ago and one about a year ago. And then, of course, as the performance of those deteriorated this year, we obtained new appraisals on both properties in the quarter just ended. ***Obviously, the property performance had deteriorated significantly on both***. That poor recent performance was factored into the assumptions in the appraisal, but led to a significant divergence in the most recent appraisals from the 2 appraisals done just 1 or 2 years ago on those properties. And hence, that's why the additional provision was needed over and above the $19.1 million that was previously reserved for these.

45.    On this news, the Company's share price fell $9.33 per share, more than 26%, to close at $25.52 per share on October 19, 2018.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

46.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired the Company's securities during the Class Period (the "Class"); and were

damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

47.    The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, the Company's securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by the Company or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

48.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

49.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

50.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

   •    whether the federal securities laws were violated by Defendants' acts as alleged herein;

•    whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of the Company;

•    whether the Individual Defendants caused the Company to issue false and misleading financial statements during the Class Period;

•    whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

•    whether the prices of the Company's securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

•    whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

51.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.    There will be no difficulty in the management of this action as a class action.

52.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

•    Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

•    the omissions and misrepresentations were material;

•    the Company's securities are traded in an efficient market;

•    the Company's securities were liquid and traded with moderate to heavy volume during the Class Period;

•    the Company traded on the NASDAQ and was covered by multiple analysts;

•    the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

•    Plaintiff and members of the Class purchased, acquired and/or sold the Company's securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

53.    Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

54.    Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

55.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

56.    This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

57.    During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of the Company's securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire the Company's securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

58.    Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for the Company's securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company's finances and business prospects.

59.    By virtue of their positions at the Company, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and

intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.  Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth.  In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

60.    Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior managers and/or directors of the Company, the Individual Defendants had knowledge of the details of the Company's internal affairs.

61.    The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of the Company.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to the Company's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of the Company's securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning the Company's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired the Company's securities at artificially inflated prices and relied upon the price of the

securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

62.     During the Class Period, the Company's securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of the Company's securities at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of the Company's securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of the Company's securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

63.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

64.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against
The Individual Defendants)**

65.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

66.     During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs.  Because of their senior positions, they knew the adverse non-public information about the Company's misstatement of income and expenses and false financial statements.

67.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Company's financial condition and results of operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

68.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which the Company disseminated in the marketplace during the Class Period concerning the Company's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of the Company's securities.

69.     Each of the Individual Defendants, therefore, acted as a controlling person of the Company.  By reason of their senior management positions and/or being directors of the Company, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, the Company to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of the Company and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

70.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated:  November 19, 2018

Respectfully submitted,

**POMERANTZ LLP**

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
Jonathan Lindenfeld
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:  (212) 661-8665
Email:  jalieberman@pomlaw.com
        ahood@pomlaw.com
        jlindenfeld@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street
Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
Facsimile:  (312) 377-1184
Email:  pdahlstrom@pomlaw.com

*Attorneys for Plaintiff*

## CERTIFICATION PURSUANT
## TO FEDERAL SECURITIES LAWS

1.     I, _____RYAN A. WOOD_____, make this

declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section

21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities

Litigation Reform Act of 1995.

2. I have reviewed a Complaint against Bank OZK ("Bank OZK" or the "Company"), and authorize

the filing of a comparable complaint on my behalf.

3. I did not purchase or acquire Bank OZK securities at the direction of plaintiffs counsel, or in order

to participate in any private action arising under the Securities Act or Exchange Act.

4.   I am willing to serve as a representative party on behalf of a Class of investors who purchased or

acquired Bank OZK securities during the class period, including providing testimony at deposition and trial, if

necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.  To the best of my current knowledge, the attached sheet lists all of my transactions in Bank OZK

securities during the Class Period as specified in the Complaint.

6.   During the three-year period preceding the date on which this Certification is signed, I have not

sought to serve as a representative party on behalf of a class under the federal securities laws.

7.   I agree not to accept any payment for serving as a representative party on behalf of the class as set

forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses

directly relating to the representation of the class as ordered or approved by the Court.

{00299603;1 }

8.   I declare under penalty of perjury that the foregoing is true and correct.

Executed ___11 / 1 / 2018_____
            **(Date)**

_____
                    **(Signature)**

___RYAN   A.   WOOD_____
                    **(Type or Print Name)**

{00299603;1 }

**BANK OZK (OZK)**                                                    **Wood, Ryan A.**

### List of Purchases and Sales

| Date | Purchase or Sale | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|
| 8/15/2017 | Purchase | 153.195 | $42.5000 |
| 8/22/2017 | Purchase | 10.850 | $41.4800 |
| 8/29/2017 | Purchase | 83.581 | $41.9600 |
| 10/20/2017 | Purchase | 0.994 | $46.0900 |
| 1/2/2018 | Purchase | 8.237 | $48.5600 |
| 1/26/2018 | Purchase | 0.947 | $51.5500 |
| 4/20/2018 | Purchase | 1.074 | $46.8200 |